UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:22-CV-61853-DIMITROULEAS/AUGUSTIN-BIRCH

VANGUARD PLASTIC SURGERY, PLLC,

      Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY,

      Defendant.

_____/

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO COMPEL AND GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTION TO MODIFY SUBPOENAS

      This cause comes before the Court on Defendant Aetna Life Insurance Company's Motion to Compel, in which Defendant seeks better responses from Plaintiff for numerous requests for production of documents and interrogatories. DE 56. Defendant's Motion to Compel is briefed at DE 56, DE 58, and DE 59. This cause also comes before the Court on Plaintiff Vanguard Plastic Surgery, PLLC's Motion to Modify, in which Plaintiff seeks to remove various topic designations and requests for production of documents from two subpoenas Defendant issued to third parties. DE 61. Plaintiff's Motion to Modify is briefed at DE 55 and DE 57. The Court held a hearing on the Motions on July 19, 2023. The Court has carefully considered the briefing, the arguments that counsel made during the hearing, and the record and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion to Compel is **GRANTED IN PART AND DENIED IN PART** and Plaintiff's Motion to Modify is **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND

Plaintiff is a company that provides medical services that include emergency and surgical services.  Defendant is a company that provides health insurance.  In this lawsuit, Plaintiff sought additional compensation above what Defendant agreed to pay for medical services Plaintiff provided to four insured patients: L.B., B.H., R.M., and R.S.  However, the Honorable William P. Dimitrouleas, Judge of District Court, previously granted Defendant's Motion to Dismiss and dismissed all but two Counts of the Amended Complaint.  *See* DE 32.  The sole remaining Counts are Counts XXVII and XXVIII.  Both Counts seek compensation for emergency services and care under Fla. Stat. § 641.513(5).  *See* Fla. Stat. § 641.513(5) ("Reimbursement for [emergency services and care] by a provider who does not have a contract with the health maintenance organization shall be the lesser of: (a) The provider's charges; (b) The usual and customary provider charges for similar services in the community where the services were provided; or (c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.").

In Count XXVII, Plaintiff seeks additional compensation for an alleged emergency surgery performed on L.B. on February 12, 2021, which the parties refer to as L.B.'s third surgery.  L.B. had bilateral mastectomies on June 11, 2020, and had breast reconstruction surgery on February 10, 2021.  Two days later, L.B. had the third surgery after allegedly developing hematoma and thrombosis, which Plaintiff maintains required immediate medical attention.  Dr. Dreszer performed this surgery at Plantation General Hospital ("Plantation General").  L.B. had breast reconstruction surgery, her fourth surgery, on August 20, 2021.

In Count XXVIII, Plaintiff seeks additional compensation for an alleged emergency surgery performed on R.S. on January 11, 2019.  On that day, R.S. allegedly suffered a laceration

of his right hand and a partial amputation of a right finger.  Dr. Fletcher performed reconstructive

surgery at Broward Health Medical Center ("Broward Health").

Defendant propounded various requests for production of documents and interrogatories

to Plaintiff, and Plaintiff's responses included several objections.  In the instant Motion to Compel,

Defendant seeks an Order requiring Plaintiff to provide better responses to 35 requests for

production of documents and 9 interrogatories.  The Court addresses the Motion to Compel in

Section III.  Defendant also served Plantation General and Broward Health with subpoenas to

testify at deposition and to bring certain documents to the deposition.  In the instant Motion to

Modify, Plaintiff seeks an Order removing 5 topic designations and 11 requests for production of

documents from each subpoena.  The Court addresses the Motion to Modify in Section IV.

## II.  SCOPE OF DISCOVERY

The issues raised in the Motion to Compel and the Motion to Modify are interrelated in

various respects.  In ruling on both Motions, the Court has of course considered the proper scope

of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.  Information within
> this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Evidence is relevant if "it has any tendency to make a fact more or less

probable than it would be without the evidence" and "the fact is of consequence in determining

the action."  Fed. R. Evid. 401.  "With respect to the issue of 'relevancy' of discovery, discovery

rules 'are to be accorded a broad and liberal treatment.'"  *Kreuzfeld A.G. v. Carnehammar*,

138 F.R.D. 594, 607 (S.D. Fla. 1991) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507-08 (1947)).

Nevertheless, discovery should be tailored to the issues in the case and is not a fishing expedition. *Engelhardt v. Svensk Mgmt., Inc.*, No. 08-62063-CIV, 2009 WL 10667463, at *2 (S.D. Fla. June 9, 2009).

### III.  DEFENDANT'S MOTION TO COMPEL

The parties' briefing on the Motion to Compel divided the disputed requests for production of documents and interrogatories into four Categories, A through D.  The Court structured the arguments and questioning during the hearing around these four Categories and addresses each Category in turn in this Order.  In Section III.E., the Court addresses Plaintiff's objections to producing records and information in native format and Plaintiff's confidentiality-related objections.  In making its rulings as to what responses Plaintiff must provide, the Court takes no position as to whether Plaintiff already has fully provided the court-ordered responses.  Based on the record, it is not entirely clear to the Court what documents Plaintiff has delivered to Defendant thus far.[1]

**A.  Requests relating to whether L.B.'s third surgery and R.S.'s surgery constituted emergency services and care.**

Request for production of documents #'s 25, 29-30, 32-33, 37, 54-55, 61, and 64 and interrogatory #'s 3 and 11-12 fall under Category A.  In this Category, Defendant seeks information to ascertain whether L.B.'s third surgery and R.S.'s January 2019 surgery truly constituted emergency services and care under the relevant Florida statutes and caselaw.[2]  In a

---

[1] The Court's confusion on this point is due at least in part to the fact that Plaintiff objected to but then provided a response to numerous requests for production and interrogatories.  The Order Setting Discovery Procedures specifically addresses such a practice and the confusion that it can create.  *See* DE 27 at 5.  The Court reminds the parties that they must fully comply with the Order Setting Discovery Procedures.

[2] During the hearing, the parties disputed the proper definition of "emergency services and care" and whether a situation may constitute an emergency even if there is a brief period of coordination.  As the parties have not briefed either the definition of emergency services and care under the law or that definition as it may apply to the medical

nutshell, Defendant seeks L.B.'s entire medical file (including the records for L.B.'s first, second, and fourth surgeries) and R.S.'s entire medical file (even if it includes records for treatment or services other than the January 2019 surgery).[3]

"[W]hen relevancy is not apparent, the burden is on the party seeking discovery to show the relevancy of the discovery request." *Am. Fed'n of State, Cnty. & Mun. Emps. (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 477 (S.D. Fla. 2011) (quotation marks omitted). Defendant maintains that the entire medical files are needed to ascertain the circumstances under which L.B. came under Plaintiff's care for the third surgery and the circumstances under which R.S. came under Plaintiff's care for the January 2019 surgery. That is, there may be something in the files demonstrating that those surgeries were not actually emergencies.

Defendant has not pointed to any specific information in the documents it already has that would indicate it might find relevant information in the medical files outside of the records for L.B.'s third surgery and R.S.'s January 2019 surgery. Moreover, even if there could be something in the entire medical files that could reflect on the emergency nature of those two surgeries and thus could be relevant to the remaining claims in this litigation, requiring Plaintiff to produce the entire medical files for L.B. and R.S. would be disproportionate to the needs of this case. The Court cannot see how, if L.B.'s third surgery and R.S.'s January 2019 surgery were not emergencies, that fact would not be reflected in the records for those surgeries. Thus, Plaintiff's objections to producing L.B.'s medical file other than the records for the third surgery and to producing R.S.'s medical file other than the records for the January 2019 surgery are sustained.

---

services at issue in this case, the Court takes no position as to the proper definition. Precisely defining emergency services and care is unnecessary to resolve the instant discovery disputes.

[3] During the hearing, Plaintiff represented to the Court that Plaintiff has no knowledge of treatment or services provided to R.S. other than for the January 2019 surgery.

Specifically, for request for production #'s 25 (documents and information concerning or relating to medical services), 32 (documents and communications reflecting efforts to obtain pre-authorizations), 33 (documents, communications, and information concerning or relating to scheduling of medical services), 54 (documents and communications with patients relating to or concerning medical services), and 61 (documents and communications with patients relating to or concerning any services), Plaintiff need only produce those documents, communications, and information for the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.   Plaintiff must produce documents in response to request for production # 64 (documents identified, consulted, reviewed, or relied upon to answer the interrogatories), with the understanding that this Order has limited Plaintiff's obligation to answer certain interrogatories.  Plaintiff need not produce documents in response to request for production #'s 29 (documents and communications reflecting efforts to obtain pre-authorization for L.B.'s second surgery), 30 (documents and communications reflecting efforts to obtain pre-authorization for L.B.'s fourth surgery), 37 (medical records relating to medical services other than those that are the subject of this lawsuit), or 55 (documents and communications with patients relating to medical services other than those identified in the Complaint).   For interrogatory #'s 3 (identification of individuals having knowledge concerning the issues in this lawsuit), 11 (identification of communications with patients regarding medical services), and 12 (identification of date, location, and time of consultations, appointments, meetings, or other iterations with patients about surgeries or procedures), Plaintiff need only respond for the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.

6

**B. Requests relating to the usual and customary provider charges for similar services in the community where the services were provided.**

Request for production of documents #'s 2, 5, 40-42, 44-46, and 48-53 and interrogatory #'s 2, 5-6, and 13 fall under Category B.  In this Category, Defendant seeks information that it maintains is relevant to a determination of the "usual and customary provider charges for similar services in the community where the services were provided" to L.B. and R.S.  *See* Fla. Stat. § 641.513(5)(b).  Usual and customary charges under § 641.513(5)(b) are "the fair market value of the services provided," with fair market value being "the price that a willing buyer will pay and a willing seller will accept in an arm's-length transaction."  *Baker Cnty. Med. Servs., Inc. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842, 845 (Fla. 1st Dist. Ct. App. 2010).  It is "appropriate to consider the amounts billed and the amounts accepted by providers" to determine the fair market value of services.  *Id.*

As an initial matter, Plaintiff has objected to several requests falling under Category B by stating that it has no responsive documents in its possession, custody, or control because it utilized a third-party billing company.  A party may serve on another party a request to produce "items in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  "Under Fed. R. Civ. P. 34, control is the test with regard to the production of documents.  Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand."  *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *see also Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 471 (S.D. Fla. 2011) (explaining that control "does not require that a party have legal ownership or actual physical possession of the documents at issue; indeed, documents have been considered to be under a party's control (for discovery purposes) when that party has the right, authority, or practical ability to obtain the materials sought on demand" (quotation marks omitted)).

When questioned concerning this issue of control during the hearing, Plaintiff did not assert that it has no right to obtain documents upon demand from the third-party billing company it previously utilized.  Rather, Plaintiff asserted that Defendant itself should subpoena the third-party billing company to produce the documents and itself should incur the expense of that discovery. At this juncture, the Court is not in a position to allocate the costs of discovery from the third-party billing company or the costs of any other discovery.  The Court concludes only that, if Plaintiff has the right to obtain documents upon demand from the third-party billing company, having considered factors such as the importance of the billing records to the issues in this case and the relative burdens of obtaining their production, Plaintiff must obtain the documents from the third-party billing company in order to respond to Defendant's requests.  *See* Fed. R. Civ. P. 26(b)(1)-(2) (defining the scope of discovery and circumstances under which a court may limit discovery).  The Court's ruling that Plaintiff must obtain documents from the third-party billing company to respond to Defendant's requests also applies to any request for production or interrogatory that is in dispute under any other Category.

That said, the Court, again having considered the proper scope of discovery, concludes that many of the requests at issue under Category B should be narrowed.  Specifically, for request for production # 2, Plaintiff must produce documents and information reflecting the amounts billed and amounts accepted for similar types of services to the medical services that L.B. received for the third surgery, but only for geozips starting with 333-- and only for the period of January 1, 2020 through December 31, 2021.[4]  For request for production # 5, Plaintiff must produce

---

[4] Plaintiff has not objected that requests for information relating to "similar types of services" are vague, and the parties appear to be in agreement that this phrase refers to services with the same medical codes as the services that L.B. and R.S. received.  In limiting the geographic scope of Defendant's requests, the Court notes that "community," as that word is used in Fla. Stat. § 641.513(5)(b), is not susceptible to a precise definition.  *See N. Shore Med. Ctr., Inc. v. Cigna Health & Life Ins. Co.*, 68 F.4th 1241, 1244 (11th Cir. 2023) ("Community is a broad term that can mean such things as neighborhood, vicinity, or locality or the people with common interests living in a particular area.

documents and information reflecting the amounts billed and amounts accepted for similar types of services to the medical services that R.S. received for the January 2019 surgery, but only for geozips starting with 333-- and only for the period of January 1, 2018 through December 31, 2019.

For request for production # 40, Plaintiff must produce (1) Chargemaster or other documents effective for the period of January 1, 2020 through December 31, 2021, reflecting the standard charges for the medical services that L.B. received for the third surgery; and (2) Chargemaster or other documents effective for the period of January 1, 2018 through December 31, 2019, reflecting the standard charges for the medical services that R.S. received for the January 2019 surgery.  For request for production # 41, Plaintiff must produce documents reflecting the analysis relied upon to establish the charges reflected in the documents produced in response to request for production # 40 as the Court has limited the scope of request for production # 40.  For request for production # 42, Plaintiff must produce documents reflecting the analysis relied upon to establish the charges billed for the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.

For request for production # 44, Plaintiff must produce communications with its billing vendor relating to the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.  For request for production # 45, Plaintiff must produce communications with Elite relating to the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.[5]  Plaintiff need not respond to request for production # 46, which requests a copy of its operative agreement with Elite.  During the hearing,

---

Nothing inherent in the word's meaning requires a particular size, scope, or makeup." (citations and quotation marks omitted)).  The Court has narrowed the geographic scope and time frame of various requests for production and interrogatories after considering the factors under Fed. R. Civ. P. 26(b)(1) and (2).

[5] Elite is the name of Plaintiff's former third-party billing company.  Request for production #'s 44 and 45 likely request identical communications.

Defendant clarified that request for production # 46 is intended to evaluate the veracity of Plaintiff's contention that it does not have control over documents held by its third-party billing company.  As discussed above, Plaintiff is no longer asserting that it has no right to obtain (and therefore no control over) documents from the third-party billing company, and therefore request for production # 46 seeks irrelevant information.

For request for production # 48, Plaintiff must produce (1) documents reflecting contracts or agreements with commercial payors in effect for the period of January 1, 2020 through December 31, 2021, establishing rates for the same services or services similar to the medical services that L.B. received for the third surgery in geozips starting with 333--; and (2) documents reflecting contracts or agreements with commercial payors in effect for the period of January 1, 2018 through December 31, 2019, establishing rates for the same services or services similar to the medical services that R.S. received for the January 2019 surgery in geozips starting with 333--. For request for production # 49, Plaintiff must produce files concerning agreements, contracts, and memorandum of understanding with the listed payors in effect from January 1, 2018 through December 31, 2021.  For request for production # 50, Plaintiff must produce documents and information evidencing or supporting the amounts it contends represent the usual and customary charges for the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.  For request for production # 51, Plaintiff must produce documents and information evidencing or supporting the amounts of reimbursement it contends represent the fair market value of the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.  For request for production # 52, Plaintiff must produce materials it contends reflect the usual and customary charges for the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.  For request for production

# 53, Plaintiff must produce documents and information evidencing or supporting the amounts or rates it claims Defendant should have paid for the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.

For interrogatory # 2, Plaintiff must respond with respect to (1) the medical services that L.B. received for the third surgery in geozips starting with 333-- for the period of January 1, 2020 through December 31, 2021; and (2) the medical services that R.S. received for the January 2019 surgery in geozips starting with 333-- for the period of January 1, 2018 through December 31, 2019.  For interrogatory # 5, Plaintiff must respond by naming employees who provide billing functions, to the extent those names are available to Plaintiff.  *See* Fed. R. Civ. P. 33(b)(1)(B) (requiring a party that is a business to furnish information available to the party when answering interrogatories); *Ecometry Corp. v. Profit Ctr. Software, Inc.*, No. 06-80083-Civ, 2007 WL 9706934, at *6 (S.D. Fla. Mar. 14, 2007) ("Parties responding to interrogatories cannot limit their answers to information within their own knowledge and ignore information that is immediately available to him or under his control.").  For interrogatory # 6, Plaintiff must respond by naming individuals who participated in the determination of the billed amounts for the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery, to the extent those names are available to Plaintiff.  Plaintiff need not respond to interrogatory # 13, which asks it to identify lawsuits for underpayment filed against Defendant or Aetna Health Inc. The Court is skeptical that a response to interrogatory # 13 would include information that is relevant to the remaining claims in this litigation and that is not already revealed through other interrogatories or requests for production.  To the extent that a response to interrogatory # 13 might include relevant information, requiring Plaintiff to respond would be disproportionate to the needs of this case.

**C.  Requests relating to Plaintiff's standing to bring claims for reimbursement.**

Request for production of documents #'s 14-15, 18-20, and 62-63 fall under Category C. In this Category, Defendant seeks information that it maintains is relevant to the following affirmative defense pled in the Answer:

*Lack of Standing*

18.     Plaintiff's claims are barred in whole or in part because it does not have standing to bring suit to collect on the subject claims. This is in part because Plaintiff does not have the right to pursue claims for reimbursement for services provided by the individual medical providers who allegedly rendered the subject services.

DE 41 at 19.

Plaintiff disputed the merits of this affirmative defense during the hearing.  However, the Court is not resolving at this discovery stage whether the affirmative defense is meritorious. *See, e.g.*, *Props. of the Villages, Inc. v. Kranz*, No. 5:19-cv-647-Oc-30PRL, 2020 WL 6393834, at *3 (M.D. Fla. Nov. 2, 2020) ("[D]uring discovery the court is not required to examine the likelihood of success or the merits of any claims or defenses, rather, the court must consider whether the information is relevant to the claims and defenses in the action, and then ask whether the proposed discovery is proportional to the needs of the case." (quotation marks omitted)); *Wachovia Fin. Servs., Inc. v. Birdman*, No. 09-81252-CIV, 2010 WL 11506642, at *2 (S.D. Fla. Oct. 25, 2010) ("Federal Rule of Civil Procedure 26(b)(1) allows discovery on any party's claims or defenses; there is no requirement that a party obtain a threshold determination of the merits of those claims before proceeding with discovery.").

Having considered Defendant's affirmative defense and the proper scope of discovery, the Court concludes that Plaintiff must respond to the requests for production at issue under Category

12

C but that some of the requests should be narrowed.  Plaintiff must produce documents in response to request for production #'s 14 and 15, which request employment agreements with Drs. Fletcher and Dreszer.  For request for production #'s 18 and 19, which request documents reflecting that Plaintiff had authority to submit claims for medical services, Plaintiff must respond only as to its authority to submit claims for services that Drs. Fletcher and Dreszer provided and only as to authority that was in effect as of the dates of L.B.'s third surgery and R.S.'s January 2019 surgery. For request for production # 20, Plaintiff must produce documents reflecting agreements, contracts, or other arrangements with medical providers reflecting that it is entitled to receive payment for the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.  For request for production #'s 62 and 63, Plaintiff must produce agreements with (1) Plantation General in effect on the date of L.B.'s third surgery; and (2) Broward Health in effect on the date of R.S.'s January 2019 surgery.

**D.  Miscellaneous requests.**

Request for production of documents #'s 8-11 and 62-63[6] and interrogatory #'s 9-10 fall under Category D.  Defendant seeks miscellaneous information in this Category.  For request for production # 8, Plaintiff must produce documents evidencing payments received from Defendant for the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.  For request for production # 9, Plaintiff must produce documents and records relating to monetary payments received from anyone for the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.  For request for production # 10, Plaintiff must produce documents reflecting efforts to collect any patient portion of the reimbursement amount due for the medical services that L.B. received for the third surgery

---

[6] Defendant also listed request for production #'s 62 and 63 under Category C.  Thus, the Court has already made its ruling as to the responses Plaintiff must provide for request for production #'s 62 and 63.

and that R.S. received for the January 2019 surgery.  For request for production # 11, Plaintiff must produce documents and communications reflecting efforts to collect any patient responsibility portion, private pays, and payments from commercial payors for the medical services that L.B. received for the third surgery and that R.S. received for the January 2019 surgery.

For interrogatory #'s 9 and 10, Plaintiff must respond by identifying the specific training and experience (1) Dr. Dreszer has with respect to the medical services that L.B. received for the third surgery; and (2) Dr. Fletcher has with respect to the medical services that R.S. received for the January 2019 surgery.  Plaintiff must respond with the information available to it, which may be beyond the information contained in the curricula vitae Plaintiff has already produced.

### E.  Plaintiff's native format and confidentiality objections.

As a final matter related to the Motion to Compel, the Court addresses two categories of objections that Plaintiff has made to numerous requests for production and interrogatories.  First, Defendant has requested that Plaintiff produce certain records and information in native format, and Plaintiff has objected that production in native format is unduly burdensome.  During the hearing, the Court questioned the parties concerning how, given the limited briefing, the Court might evaluate the burden of production in native format.  The parties' responses reflect that they have not adequately conferred with their clients and with one another concerning this issue.  As examples, Plaintiff's counsel stated that she was still trying to confirm with her client what the native format for certain records and information might be and how they might be produced.  Defendant's counsel stated that the parties had not discussed search terms and would work together on this issue.  Consequently, the Court will not rule on Plaintiff's objections concerning production in native format at this time.  The Court expects the parties to work together in good faith to resolve these objections.  Should the parties be unable to resolve the objections, they may bring this issue

14

before the Court again by following the procedures in the Order Setting Discovery Procedures. *See* DE 27.

Second, Plaintiff has responded to various requests for production and interrogatories by objecting that the information sought is confidential, privileged, proprietary, and/or otherwise protected.   During the hearing, the Court questioned the parties concerning whether these objections are valid in light of the stipulated Protective Order and Confidentiality Order in place in this litigation.   *See* DE 50-1; DE 50-2.   The parties' responses reflect that they have not adequately conferred concerning these objections.   As examples, the parties have not conferred on whether the Protective and Confidentiality Orders either are adequate or can and should be modified to alleviate Plaintiff's concerns.   The parties have not conferred on redactions that may alleviate Plaintiff's concerns.   Consequently, the Court will not rule on Plaintiff's confidentiality-related objects at this time.   The Court expects the parties to work together in good faith to resolve these objections.   Should the parties be unable to resolve the objections, they may bring this issue before the Court again by following the procedures in the Order Setting Discovery Procedures. Should the parties re-raise the native-format objections and/or the confidentiality-related objections to the Court, and should the Court determine that an objection by Plaintiff is meritorious, the Court may reevaluate the productions and responses required of Plaintiff under this Order.

### IV.  PLAINTIFF'S MOTION TO MODIFY

As explained above, Defendant served Plantation General and Broward Health with subpoenas to testify at deposition and to bring certain documents to the deposition, and Plaintiff's Motion to Modify seeks to remove certain topic designations and requests for production of documents from each subpoena.  Specifically, Plaintiff seeks to remove topic designation #'s 15-17

and 19-20 from both subpoenas, request for production #'s 6, 14, 16-19, and 23-27 from the
Plantation General subpoena, and request for production #'s 6, 14, 17-20, and 24-28 from the
Broward Health subpoena.  Before issuing its rulings as to these topic designations and requests
for production, however, the Court addresses the preliminary issue of Plaintiff's standing to
challenge the Plantation General and Broward Health subpoenas.

   **A.  Plaintiff's standing to challenge the subpoenas.**

   "Generally, an individual does not have standing to challenge a subpoena served on
another, unless that individual has a personal right or privilege with respect to the subject matter
of the subpoena." *Barrington v. Mortg. It, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *1 (S.D.
Fla. Dec. 10, 2007).  "[C]ourts have repeatedly found that an individual possesses a personal right
with respect to information contained in employment records and, thus, has standing the challenge
such a subpoena." *Id.*  The Court construes several topic designations and requests for production
as seeking employment record information for Plaintiff and its employees.  Thus, Plaintiff has
standing the challenge the following topic designation #'s: 15 (complaints, negative reviews, and
non-privileged performance evaluations), 16 (agreements giving privileges to practice medicine
or perform or participate in surgical procedures), and 17 (agreements giving on-call privileges).
Plaintiff also has standing to challenge the following request for production #'s: Plantation General
subpoena 14/Broward Health subpoena 14 (agreements giving privileges to practice medicine or
perform  or participate in surgical procedures), Plantation General subpoena 16/Broward Health
subpoena 17 (agreements giving on-call privileges), Plantation General subpoena 17 and
18/Broward Health subpoena 18 and 19 (complaints, negative reviews, and performance
evaluations), and Plantation General subpoena 23/Broward Health subpoena 24 (documents
reflecting on-call schedules).

Further, a party has a personal right or privilege with respect to its financial records and therefore has standing the challenge a subpoena for those records. *Gabriel v. G2 Secure Staff, LLC*, 225 F. Supp. 3d 1370, 1372 (S.D. Fla. 2016). The Court construes various topic designations and requests for production as seeking financial information for Plaintiff. Thus, Plaintiff has standing the challenge the following topic designation #'s: 19 (compensation paid and compensation structure for on-call services) and 20 (compensation rate for on-call services). Plaintiff also has standing to challenge the following request for production #'s: Plantation General subpoena 24/Broward Health subpoena 25 (documents reflecting compensation paid for on-call services) and Plantation General subpoena 25/Broward Health subpoena 26 (documents reflecting policies or procedures governing or limiting on-call compensation).

The remaining requests for production in dispute are Plantation General subpoena #'s 6, 19, and 26-27 and Broward Health subpoena #'s 6, 20, and 27-28. The Court does not construe these requests as necessarily seeking either employment record information for Plaintiff and its employees or financial information for Plaintiff. However, Plaintiff has objected to these requests for production (as well as other requests for production and topic designations) at least in part based on relevance. "[C]ourts in the Eleventh Circuit have repeatedly held that a party may challenge a subpoena directed at a nonparty if the subpoena request irrelevant information." *Bush Truck Leasing, Inc. v. Office Depot, Inc.*, No. 11-80026-CIV, 2011 WL 13228102, at *3 (S.D. Fla. May 6, 2011). The party may make such a challenge by moving for a protective order under Fed. R. Civ. P. 26(c)(1). *Id.*; *see* Fed. R. Civ. P. 26(c)(1) (permitting a party or person from whom discovery is sought to move for a protective order in the court where the action is pending). Further, courts have construed motions to quash or modify subpoenas as motions for a protective order under Rule 26(c)(1). *E.g., Psychic Readers Network, Inc. v. Take-Two Interactive Software,*

*Inc.*, No. 17-61492-CIV, 2018 WL 7048217, at *2 (S.D. Fla. Oct. 1, 2018) ("Although Defendants lack standing to quash the subpoenas, they may move for a protective order under Rule 26 on grounds of relevance."); *Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-Civ, 2008 WL 5049277, at *3 (S.D. Fla. Nov. 25, 2008) ("Though Defendants lack standing to quash the subpoenas . . . the Court construes their Motion as also seeking a protective order under Rule 26 on grounds that the subpoenas are overbroad and seek irrelevant information.  As parties, Defendants have standing to seek such relief.").  To the extent that Plaintiff does not have standing to move to modify the subpoenas as to request for production #'s 6, 19, and 26-27 of the Plantation General subpoena and #'s 6, 20, and 27-28 of the Broward Health subpoena, the Court construes Plaintiff's Motion to Modify as seeking a protective order in the alternative.  Thus, the Court will not deny the Motion to Modify due to lack of standing.

**B.  Plaintiff's challenge to topic designations and requests for production.**

Having considered the proper scope of discovery, the Court will modify the subpoenas to narrow many of the topic designations and requests for production.  Topic designation # 15 addresses complaints, negative reviews, and non-privileged performance evaluations for any physician associated with Plaintiff.  This information is relevant to a determination of the usual customary charges but only as to Drs. Dreszer and Fletcher, and therefore the Court narrows topic designation # 15 to apply only to those to two physicians.  The Court narrows topic designation #'s 16 and 17 to apply to agreements (1) between Plaintiff and Plantation General in effect on the date of L.B.'s third surgery; and (2) between Plaintiff and Broward Health in effect on the date of R.S.'s January 2019 surgery.  The Court narrows topic designation #'s 19 and 20 to apply to compensation information (1) for the period of January 1, 2020 through December 31, 2021, from Plantation General; and (2) for the period of January 1, 2018 through December 31, 2019, from

Broward Health.   To the extent that the compensation information sought through topic designation #'s 19 and 20 is specific to particular medical services, the Court further narrows those topic designations (1) in the Plantation General subpoena to apply to the medical services that L.B. received for the third surgery; and (2) in the Broward Health subpoena to apply to the medical services that R.S. received for the January 2019 surgery.

The Court narrows request for production #'s Plantation General subpoena 6/Broward Health subpoena 6 to apply to documents and communications (1) between Plaintiff and Plantation General related to the medical services that L.B. received for the third surgery; and (2) between Plaintiff and Broward Health related to the medical services that R.S. received for the January 2019 surgery.  The Court narrows request for production #'s Plantation General subpoena 14 and 16/Broward Health subpoena 14 and 17 to apply to agreements (1) between Plaintiff and Plantation General in effect on the date of L.B.'s third surgery; and (2) between Plaintiff and Broward Health in effect on the date of R.S.'s January 2019 surgery.  The Court narrows request for production #'s Plantation General subpoena 17 and 18/Broward Health subpoena 18 and 19 to apply only to Drs. Dreszer and Fletcher.  The Court narrows request for production #'s Plantation General subpoena 19/Broward Health subpoena 20 to apply to communications (1) between Plaintiff and Plantation General related to the medical services that L.B. received for the third surgery; and (2) between Plaintiff and Broward Health related to the medical services that R.S. received for the January 2019 surgery.

The Court narrows request for production #'s Plantation General subpoena 23/Broward Health subpoena 24 to apply to documents (1) from Plantation General only for the date of L.B.'s third surgery; and (2) from Broward Health only for the date of R.S.'s January 2019 surgery.  To the extent that the compensation information sought through request for production #'s Plantation

19

General subpoena 24 and 25/Broward Health subpoena 25 and 26 is specific to particular medical services, the Court narrows those requests for production (1) in the Plantation General subpoena to apply to the medical services that L.B. received for the third surgery; and (2) in the Broward Health subpoena to apply to the medical services that R.S. received for the January 2019 surgery. The Court narrows request for production #'s Plantation General subpoena 26/Broward Health subpoena 27 to apply to agreements and contracts (1) in effect on the date of L.B.'s third surgery for plastic surgeons on-call at Plantation General on the date of that surgery; and (2) in effect on the date of R.S.'s January 2019 surgery for plastic surgeons on-call at Broward Health on the date of that surgery. The Court narrows request for production #'s Plantation General subpoena 27/Broward Health subpoena 28 to apply to documents reflecting the number of plastic surgeons who were on-call at Plantation General on the date of L.B.'s third surgery and on-call at Broward Health on the date of R.S.'s January 2019 surgery.

Finally, Plaintiff also objects to various topic designations and requests for production on the basis that the information sought is confidential and/or proprietary. For the same reasons discussed above as such objections apply to Defendant's requests for production and interrogatories, the Court will not rule on Plaintiff's confidentiality-related objects at this time. The Court expects the parties to work together in good faith to resolve these objections. Should the parties be unable to resolve the objections, they may bring this issue before the Court again by following the procedures in the Order Setting Discovery Procedures. Should the parties re-raise the confidentiality-related objections to the Court, and should the Court determine that an objection by Plaintiff is meritorious, the Court may reevaluate any ruling as to the subpoenas.[7]

---

[7] The subpoenas request that certain records and information be produced in native format, however Plaintiff does not had standing to object to the subpoenas on the ground that production in native format is unduly burdensome. *See Armor Screen Corp.*, 2008 WL 5049277, at *2 ("[A] party lacks standing to challenge subpoenas served on another

For the foregoing reasons, Defendant's Motion to Compel [DE 56] is **GRANTED IN PART AND DENIED IN PART** and Plaintiff's Motion to Modify [DE 61] is **GRANTED IN PART AND DENIED IN PART**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 11th day of August, 2023.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE

---

on the grounds of oppression and undue burden placed upon the third parties where the non-parties have not objected on those grounds." (quotation marks omitted)).